UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| RTI CONNECTIVITY PTE. LTD., A SINGAPORE PRIVATE LIMITED COMPANY; AND RUSSELL A. MATULICH,<br><br>          Plaintiffs,<br><br>     vs.<br><br>GATEWAY NETWORK CONNECTIONS, LLC,<br><br>          Defendant. | CIV. NO. 23-00165 LEK-WRP |

**ORDER DENYING DEFENDANT'S MOTION TO MODIFY, CHANGE, OR VACATE FINAL ARBITRATION AWARD AND GRANTING PLAINTIFFS' MOTION TO CONFIRM AWARD OF ARBITRATION PANEL**

Before the Court are: Plaintiffs RTI Connectivity Pte., Ltd. ("RTI-C") and Russell A. Matulich's ("Matulich" and collectively "Plaintiffs" or "Claimants") Motion to Confirm Final Award of Arbitration Panel ("Motion to Confirm"), filed on March 24, 2023 in state court; and Defendant Gateway Network Connections, LLC's ("GNC," "Defendant," or "Respondent") Motion to Modify, Change, or Vacate Final Arbitration Award ("Motion to Vacate"), filed on May 3, 2023. See Defendant's Notice of Removal, filed 4/10/23 (dkt. no. 1), Decl. of Randall C. Whattoff, Exh. A (Motion to Confirm); Motion to Vacate, filed 5/3/23 (dkt. no. 16). The Motion to Vacate is also Defendant's opposition to the Motion to Confirm. Defendant's Motion to

Vacate is denied because Defendant has not established that the arbitration panel made an award on a claim not submitted to the panel, and the panel did not exceed its authority.  Plaintiffs' Motion to Confirm is hereby granted, including an award for reasonable attorney's fees and costs that will be determined through a separate motion that shall be filed with the magistrate judge.

**BACKGROUND**

I.   **The Arbitration**

The arbitration award at issue in this case was issued following hearing on the parties' claims held from August 22 to 25, 2022.  See Motion to Confirm, Decl. of Leroy E. Colombe ("Colombe Decl."), Exh. 1 (Findings of Fact, Conclusions of Law, and Final Award, dated 2/3/23 ("Final Award")), at 2.  The factual background, as described by the panel is as follows.

> RTI-C and other companies bearing the moniker (RTI) allegedly made up a California general partnership known as the RTI Group.  These companies were in the subsea fiber optic cable business which involves both the construction of undersea cables to transfer data and data centers at both ends of the undersea cable which receive and re-transmit that data to its intended destination.  The undersea cable operators were sometimes referred to as "wet companies" and the data centers as "dry companies."  Matulich, with others, owned interests in both wet and dry companies.

[Id. at 2-3.]  GNC was formed in order to construct, own, and operate a data center and cable landing station in Piti, Guam.

[Id. at 15, ¶ 5.]  Asia Connectivity Elements, Inc. ("ACE") and TeleGuam Holdings, LLC ("GTA") held a 51% interest and a 49% interest, respectively, in GNC.  [Id. at 3.]  ACE was controlled by Matulich and two others who were affiliated with the RTI Group, Brett Lay ("Lay") and Brian Mass ("Mass").  [Id.]

GNC and the data center were created pursuant to a joint venture agreement, dated June 2019 ("JVA").  Id.; see also Colombe Decl., Exh. 3 (Commercial Arbitration Rules Demand for Arbitration, dated 4/13/21 ("Demand")), Exh. A (JVA).  Under the JVA, GNC was to be operated pursuant to an operating agreement. See Colombe Decl., Exh. 1 (Final Award) at 3; see also id., Exh. 3 (Demand), Exh. B (Operating Agreement for Gateway Network Connections, LLC a Guam Limited Liability Company).

The Guam data center was intended to be "a neutral data center where RTI-C would have a licensed space where it and its clients would have equipment that would receive and re-distribute data received from subsea cables and also serve as a landing station for subsea cables owned and operated by RTI-C and other RTI companies."  [Colombe Decl., Exh. 1 (Final Award) at 3.]  While the Guam data center was still under construction, one of the RTI companies' cables – the Japan, Guam and Australian northern cable ("JGA-N") – was landed at the data center's landing station.  At that time, the agreement between

3

GNC and the data center's future customers, including RTI-C, had yet to be completed. [Id. at 4.]

As of July 1, 2020, GNC and RTI-C entered into a GNC Master License and Services Agreement ("MSA") and an Order for Colocation ("Order" and collectively "MSA/Order"). See generally Colombe Decl., Exh. 3 (Demand), Exh. C (MSA) (dkt. no. 1-3 at PageID.167-94) & Exh. D (Order) (dkt. no. 1-3 at PageID.195-202).   The Order provided a license for a 449-square-foot cage space ("Licensed Space"). [Colombe Decl., Exh. 1 (Final Award) at 27, ¶ 3.]

In December 2020, Lay and Mass sold their stock to someone who was not affiliated with any RTI entity.  Lay and Mass also resigned from their positions in RTI-C and other RTI entities.  This left Matulich without the ability to control ACE, the majority member of GNC.  In January 2021, ACE terminated Matulich as its chief executive officer ("CEO"), and GNC terminated him as its CEO and director.[1]  Thereafter, GNC

---

[1] The arbitration panel determined, in a bifurcated phase of the arbitration, that the attempts to remove Matulich from those positions were ineffective, and therefore he remained in those positions at the time of the decision.  See Colombe Decl., Exh. 2 (Findings of Fact and Conclusions of Law and Final Award on Bifurcated Issue of Whether Claimant Russell Matulich Was Effectively Removed as the CEO and Director of Respondent Gateway Network Connections, LLC, dated 5/17/22 ("Bifurcated Issue Award")) at 15.  The Bifurcated Issue Award was expressly made a part of the Final Award.  See Colombe Decl., Exh. 1 (Final Award) at 32.  In light of its ruling in the Bifurcated
(. . . continued)

sent RTI-C an invoice for RTI-C's uncompleted space in the data center, and GNC threatened to cut off RTI-C's power if the invoice was not paid.  [Id. at 5.]  On January 15, 2021, GNC issued an invoice to RTI-C in the amount of $354,943.20 for monthly recurring charges ("MRC") from July 2020 to December 2020.  GNC continued to issue RTI-C further invoices for MRC.  [Id. at 26.]  RTI-C referred to these collectively as the "Bogus Invoices," see id., but the arbitration panel stated it saw "no reasons to adopt RTI-C's pejorative term 'bogus[,]'" id. at 30.  This Court will therefore refer to them as the "Disputed Invoices."

Matulich, RTI-C, and other entities filed an action in a California state court to challenge Matulich's terminations and the invoices issued to RTI-C ("California Litigation").  Id. at 5; see also Motion to Vacate, Decl. of Randall C. Whattoff ("Whattoff Decl."), Exh. 5 (Verified Complaint; Partner Expulsion Application; Petition for Writ of Mandamus; Petition to Compel Application, filed 3/1/21, in the California Litigation ("California Complaint")).  The defendants in the California Litigation were GNC, Lay, Mass, ACE, and two RTI entities.  See Whattoff Decl., Exh. 5 (California Complaint) at

---

Issue Award, the arbitration panel "dismissed GNC's counterclaim [against RTI-C] on the grounds that GNC did not have the required unanimous approval of the GNC board of directors to file and prosecute its counterclaim."  [Id. at 11.]

pgs. 2-3.  Three of the claims in the California Complaint –
Causes of Action Eleven, Twelve, and Thirteen - were stayed
pending arbitration, pursuant to the relevant arbitration
agreements.  <u>See</u> Colombe Decl., Exh. 1 (Final Award) at 6; <u>see
also</u> Whattoff Decl., Exh. 6 (Stipulation and [Proposed] Order
Granting Partial Stay of Action Pending Arbitration ("California
Stipulation")).[2]

Claimants filed the Demand against GNC on April 13,
2021 with the American Arbitration Association ("AAA")
International Centre for Dispute Resolution.  <u>See generally</u>
Colombe Decl., Exh. 3 (Demand).  The arbitration panel
identified the following as Claimants' statement of their claims
in the arbitration:  "Claimants request that the arbitrator
rescind the MSA and Order fraudulently induced and executed,
that the arbitrator order the refund of overpaid amounts under
invoices paid under protest by RTI-C to GNC, and reinstate
Matulich as CEO of GNC."  [<u>Id.</u>, Exh. 1 (Final Award) at 7
(emphases omitted) (quoting section I of the Demand).]
Claimants also alleged the re-executed version of the MSA/Order
was improperly executed and therefore invalid and/or
unenforceable, rendering the invoices that GNC issued to RTI-C

---

[2] Exhibit 6 does not indicate whether the California
Stipulation was filed in the California Litigation.  The order
portion of the document is not signed by the state court.

under that version of the MSA/Order void or voidable by RTI-C. Claimants further alleged that, even if the re-executed version of the MSA/Order is valid, the invoices were overstated and RTI-C was entitled to a refund for various reasons, including defects in its Licensed Space. [Id. at 8-10.]

On May 18, 2021, GNC filed its answer to the Demand, with a counterclaim against RTI-C. [Colombe Decl., Exh. 7 (GNC's Answer to Demand for Arbitration Dated April 13, 2021 ("Answer")).] The parties subsequently agreed to conduct the arbitration through Dispute Prevention & Resolution, Inc. ("DPR"), instead of AAA. See id., Exh. 9 (Agreement to Participate in Binding Arbitration, dated August 2021 ("DPR Agreement")). In the DPR Agreement, the parties agreed Haw. Rev. Stat. Chapter 658A would govern the arbitration proceedings. [Id. at 1.]

### A.   Fraud-Based Claims

In the Final Award, the arbitration panel rejected Claimants' argument that they were fraudulently induced into executing the MSA/Order because Claimants failed to show any reliance on misrepresentations or nondisclosures by Lay. Further, to the extent that there was any intentional misconduct by Lay and/or Mass, Claimants failed to prove that GNC was liable for the misconduct. [Colombe Decl., Exh. 1 (Final Award) at 17-20.]

The arbitration panel also rejected Claimants'
argument that the MSA/Order was fraudulently executed because
Claimants failed to prove that the persons who executed the
MSA/Order lacked the actual or apparent authority to enter into
it.  Thus, the MSA/Order could not be voided by RTI-C, and it
was binding and effective on the parties to it.  [Id. at 20-26.]

**B.  <u>Disputed Invoices Claim</u>**

As to the claim regarding the Disputed Invoices, the
arbitration panel found that GNC did not prepare and deliver the
Licensed Space to RTI-C on or before the anticipated
Commencement Date of September 1, 2020.  Thus, under the
MSA/Order, the "Commencement Date" for the use of the Licensed
Space had not occurred, and therefore GNC could not bill RTI-C
for any MRC and the Disputed Invoices that GNC issued to RTI-C
for MRC were invalid.[3]  The panel ordered GNC to refund all
monies that RTI-C had paid for any MRC and ordered RTI-C and GNC
to go through the notice and inspection procedures set forth in
the MSA/Order for the Licensed Space.  [Id. at 26-31.]  In its

---

[3] The MRC consisted of a $40,000 monthly charge for the
Licensed Space and other charges defined in the Order.  [Colombe
Decl., Exh. 3 (Demand), Exh. D (Order) at § 5 (dkt. no. 1-3 at
PageID.196).]  In contrast to MRC, nonrecurring charges ("NRC")
could be imposed prior to the official Commencement Date, and
the arbitration panel found that RTI-C was required to pay any
invoices that GNC issued to RTI-C for NRC.  [Id., Exh. 1 (Final
Award) at 30.]

analysis, the panel specifically noted the following provision

of the MSA:

> 2.2 Preparation of Licensed Space.  GNC and
> Customer will work together to schedule
> preparation of the Licensed Space according to
> the specifications detailed in the Order, taking
> into consideration any customer requested start
> dates.  The date that GNC commits, pursuant to
> the terms and conditions of the applicable Order,
> to deliver the Licensed Space will be the
> "Commencement Date", *__and the Term and the start__*
> *__of billing of the MRC for the Licensed Space__*
> *__begins on the Commencement Date.__*  **Customer will**
> **pay an NRC for preparation of the Licensed Space**
> **as provided in the applicable Order.  GNC will**
> **not commence work until Customer has paid the**
> **NRC.**  GNC shall use commercially reasonable
> efforts, but shall have no liability for any
> failure to deliver the Licensed Space by the
> Commencement Date.  **If GNC does not deliver the**
> **Licensed Space by the Commencement Date, such**
> **late delivery shall not affect the validity of a**
> **license or the obligations of the Parties under**
> **any Order and this Agreement, but the date that**
> **GNC delivers the Licensed Space shall become the**
> **Commencement Date** (and in such event, the length
> of the Term shall not be reduced thereby, and the
> scheduled expiration date of the Term shall be
> extended, if necessary, to provide for the full
> Term.

Id. at 27 (emphases in Final Award) (quoting MSA § 2.2); see

also Colombe Decl., Exh. 3 (Demand), Exh. C (MSA) at 1 (dkt.

no. 1-3 at PageID.167).  Although the Order stated the **Service**

Commencement Date was September 1, 2020, RTI-C requested to use

the Licensed Space earlier, in June 2020, to land its subsea

internet cable, and GNC agreed.  [Whattoff Decl., Exh. 2

(transcripts of Video Conference Arbitration, taken 8/22/22 to

8/25/22 ("Arb. Trans.")) at 873:15-24, 1163:6-1165:4).]  GNC points out that, in addition to providing RTI-C with the Licensed Space itself, GNC has provided power, plus other services and accommodations.  See id. at 1015-18; see also Whattoff Decl., Exh. 3 (expert report by David M. Chudzik, Ph.D., MAI, CRE) at 4-5 (dkt. no. 22-1 at PageID.1363-64)).[4] RTI-C has been able to utilize the Licensed Space to service RTI-C's clients, earn revenue, and sublease the Licensed Space. See Whattoff Decl., Exh. 2 (Arb. Trans.) at 875-76; see also id., Exh. 4 (Damages Report of Heather H. Xitco, CPA, MBA, CFF, July 20, 2022) at ¶ 46 (dkt. no. 22-2 at PageID.1405)).]

The arbitration panel ruled that, although the failure to prepare and formally deliver the Licensed Space to RTI-C by September 1, 2020 delayed the Commencement Date, it did not constitute a breach of the MSA/Order.  [Colombe Decl., Exh. 1 (Final Award) at 28-29.]  Because GNC failed to deliver the Licensed Space by September 1, 2020, MSA § 2.3 applied:

> 2.3 Acceptance of Licensed Space.  Customer shall have seven (7) days from the date that GNC makes the Licensed Space available to the Customer to inspect the Licensed Space for conformance to the specifications as provided in the Order (the **"Inspection Period"**).  The Customer shall be

---

[4] Exhibits 3, 4, and 16 to the Whattoff Declaration were filed separately.  See Exhibits 3, 4, and 16 in Support of [16] Defendant Gateway Network Connections, LLC's Joint (1) Opposition to Motion to Confirm Final Award of Arbitration Panel [Dkt. 1-2] and (2) Motion to Modify, Change, or Vacate Final Arbitration Award, filed 5/16/23 (dkt. no. 22).

> deemed to have accepted the Licensed Space
> immediately upon the expiration of the Inspection
> Period which deemed acceptance date shall be the
> Commencement Date, unless GNC receives a notice
> from Customer prior to the end of the Inspection
> Period setting forth in writing the specific non-
> conformity with the specifications.  In such
> case, GNC shall promptly rectify such non-
> conformities and the inspection and acceptance
> process set forth hereinabove shall repeat.

Id. at 29 (emphasis in Final Award) (quoting MSA § 2.3); see

also Colombe Decl., Exh. 3 (Demand), Exh. C (MSA) at 1 (dkt.

no. 1-3 at PageID.167).  The arbitration panel concluded that,

as of the time of the arbitration, the start of the Inspection

Period had not yet occurred.  After GNC complied with MSA § 2.3,

and RTI-C accepted, or was deemed to have accepted, the Licensed

Space, GNC could properly invoice RTI-C for MRC, and RTI-C would

be liable for those charges.  [Colombe Decl., Exh. 1 (Final

Award) at 29-30.]  However, GNC argues the California Complaint

did not address the inspection date, the acceptance of the

Licensed Space, MSA § 2.3, nor other concepts related to those

subjects.  GNC also argues the Demand did not include any claim

regarding the inspection of the Licensed Space, nor did the

Demand suggest that the period of the MSA had not commenced.

Further, during the arbitration hearings, neither Claimants nor

GNC raised the issue of whether all of the monthly payments that

RTI-C had made should be returned, based on MSA §§ 2.2 and 2.3.

[Motion to Vacate, Mem. in Supp. at 7.]

RTI-C also claimed during the arbitration proceedings that there were defects in the Licensed Space, as well as defects in the data center outside of the Licensed Space, including uneven flooring, problems with the air conditioning system, and electrical interruptions.  The arbitration panel concluded that any defects in the Licensed Space would be addressed during the § 2.3 inspection process, and RTI-C failed to prove that any defects in the data center outside of the Licensed Space prevented RTI-C from conducting its operations at the data center.  The arbitration panel therefore rejected this claim.  [Colombe Decl., Exh. 1 (Final Award) at 29-30.]

C.   **Request for Attorney's Fees and Costs**

As to Claimants' request for attorney's fees and costs, the arbitration panel concluded that: 1) attorney's fees were not available under the JVA because Claimants are not parties to the JVA, they did not prevail on any claim related to the JVA, and the JVA provides the parties to an arbitration are to bear their own legal fees and to bear the costs of the arbitration equally; [id. at 33-34 (citing JVA art. 15, § 15.1);] 2) Matulich could not recover attorney's fees under the Operating Agreement because he is not a member of GNC; [id. at 34-35 (citing Operating Agreement §§ 13.9, 13.17);] and 3) Guam law applied and Guam follows the American Rule that parties to a civil action bear their attorney's fees and costs,

[id. at 35-36].  However, the arbitration panel concluded that RTI-C could recover attorney's fees for its defense against GNC's counterclaim, which had sought an award of damages against RTI-C based on the alleged failure to pay invoices, as well as an award of attorney's fees.  [Id. at 36-39 (citing MSA § 8.2).] The arbitration panel awarded $12,566.00 to RTI-C for attorney's fees reasonably incurred in the defense against that counterclaim.  [Id. at 39.]

      **D.   Post-Award Proceedings**

        GNC filed a motion seeking clarification of the Final Award ("GNC Motion to Clarify"), and the arbitration panel denied the motion in part in an order issued on March 14, 2023. See Colombe Decl., Exh. 11 (order on GNC Motion to Clarify). The GNC Motion to Clarify was granted only to the extent that the arbitration panel clarified that its order requiring GNC to refund MRC paid by RTI-C and requiring RTI-C pay any invoiced NRC also included any applicable taxes.  [Id. at § VI.]  RTI-C filed a motion to modify and correct the Final Award ("RTI-C Motion to Modify"), but the arbitration panel denied that motion in another March 14, 2023 order.  [Colombe Decl., Exh. 10 (order on RTI-C Motion to Modify).]

**II.   The Instant Case**

        In the instant case, the Motion to Confirm asks this Court to confirm the Final Award and the Bifurcated Issue Award.

In the Motion to Vacate, GNC only challenges the arbitration
panel's Final Award as to the Disputed Invoices claim.  GNC
argues that part of the Final Award should modified or, in the
alternative, vacated.

**DISCUSSION**

I.  **Applicable Law**

   This district court has recognized that, when parties
agree to arbitrate, they

> have the ability to choose an applicable legal
> standard in an arbitration agreement.  Fid. Fed.
> Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1312
> (9th Cir. 2004).  Parties may choose which law
> governs the contract, the arbitration, and review
> of an arbitration award.  See id.  The parties'
> choice of law, however, is subject to some
> limitations.  Hall St. Associates, L.L.C. v.
> Mattel, Inc., 552 U.S. 576, 586 (2008).  Private
> parties cannot, for instance, create their own
> standard for confirming or vacating an
> arbitration award.  Id.

YF Franchise LLC v. An, Civ. No. 14-00496 HG-KSC, 2015 WL
877723, at *2 (D. Hawai`i Feb. 27, 2015).

   In the instant case, the parties agreed: 1) the
arbitration would be governed by Haw. Rev. Stat. Chapter 658A
and the DPR Arbitration Rules, Procedures & Protocols; 2) the
parties reserved the right to file motions to confirm, correct,
modify, or vacate the award in the State of Hawai`i First
Circuit Court; and 3) the parties could appeal the First Circuit

Court's order under the applicable law.  See Colombe Decl.,
Exh. 9 (DPR Agreement) at 1.

This Court previously concluded that the language of
the DPR Agreement "clearly expresses the parties' intent that
any action to confirm or vacate the arbitration award would be
litigated in the state courts and therefore under state law,"
and therefore Haw. Rev. Stat. Chapter 658A governed the motion
to confirm the arbitration panel's interim award.  RTI
Connectivity Pte. Ltd. v. Gateway Network Connections, LLC, CIV.
NO. 22-00302 LEK-RT, 2022 WL 2981518, at *4-5 (D. Hawai`i
July 28, 2022) ("CV 22-302 7/28/22 Order").  For the same
reasons stated in the CV 22-302 7/28/22 Order, this Court also
concludes that Chapter 658A governs this Court's consideration
of the Final Award.

> Under [Chapter 658A], and given "the
> legislative policy to encourage arbitration and
> thereby discourage litigation, judicial review of
> an arbitration award is confined to 'the
> strictest possible limits.'"  Ventress v. Japan
> Airlines, 603 F.3d 676, 679 (9th Cir. 2010)
> (citing Gadd v. Kelley, 66 Haw. 431, 667 P.2d
> 251, 258 (Haw. 1983)).  Accordingly, HRS § 658A
> requires courts to confirm arbitration awards
> unless an award is modified or corrected pursuant
> to § 658A-24, or vacated under limited
> circumstances pursuant to § 658A-23.  Matter of
> Hawai`i State Teachers Ass'n, 140 Haw. 381, 391,
> 400 P.3d 582, 592 (Haw. 2017); In re Grievance
> Arbitration Between State Org. of Police
> Officers, 135 Haw. 456, 462, 353 P.3d 998, 1004
> (Haw. 2015). . . .

15

<u>Id.</u> at *6 (some alterations in CV 22-302 7/28/22 Order)
(citation omitted).

## II. <u>Modifying the Final Award</u>

GNC argues this Court should modify the Final Award to
remove: all discussion of the issue of whether RTI-C accepted
the Licensed Space after a formal inspection period; and the
arbitration panel's order that GNC refund all of the MRC paid by
RTI-C.  According to GNC, because the parties did not submit a
total-MRC-refund claim to the arbitration panel for
determination, the Hawai`i Uniform Arbitration Act ("HUAA")
requires that the Final Award be modified or changed.  Haw. Rev.
Stat. § 658A-24(a) and (b) states, in pertinent part:

> (a)  Upon motion made within ninety days
> after the movant receives notice of the award
> pursuant to section 658A-19 or within ninety days
> after the movant receives notice of a modified or
> corrected award pursuant to section 658A-20, the
> court shall modify or correct the award if:
>
> . . . .
>
> (2)  The arbitrator has made an award
> on a claim not submitted to the arbitrator
> and the award may be corrected without
> affecting the merits of the decision upon
> the claims submitted; or
>
> . . . .
>
> (b)  If a motion made under subsection (a) is
> granted, the court shall modify or correct and
> confirm the award as modified or corrected.
> Otherwise, unless a motion to vacate is pending,
> the court shall confirm the award.

Plaintiffs' Demand sought, *inter alia*, "the refund of overpaid amounts under invoices paid under protest by RTI-C to GNC[.]"[5]  [Colombe Decl., Exh. 3 (Demand) at § I.]  The Demand explained that, "[o]n January 15, 2021, pursuant to the November MSA and Order, GNC issued to RTI-C bogus invoices of roughly $500,000 for past-due rent and charges for the Guam facility back dated to July 1, 2020," and "[o]n February 8, 2021, RTI-C timely disputed the GNC invoices and noted defects in the Guam facility."  [Id. at § VII.]  In the Final Award, the arbitration panel stated that, "[o]n January 15, 2021, GNC invoiced RTI-C in the amount of $354,943.20 for monthly recurring charges (MRC) for the period of July-December 2020" and that RTI-C challenged the invoices.  [Colombe Decl., Exh. 1 (Final Award) at 26 (citing Exh. J-297 at pg. 2).]  To determine what amount of the MRC GNC was entitled to bill RTI-C for, if any, the arbitration panel analyzed the issue of when GNC was entitled begin billing RTI-C for MRC in the first instance.  That analysis began with MSA §§ 2.2 and 2.3.  See Colombe Decl., Exh. 3 (Demand), Exh. C (MSA) at § 2.2 ("the Term and the start of billing of the MRC for the Licensed Space begins on the Commencement Date") (dkt.

---

[5] It is not necessary to address whether this claim was part of the California Litigation because Plaintiffs submitted this claim to the arbitration panel, and the panel recognized it as one of the claims before the panel.  See Colombe Decl., Exh. 1 (Final Award) at 7.

no. 1-3 at PageID.167); id. at § 2.3 ("The Customer shall be
deemed to have accepted the Licensed Space immediately upon the
expiration of the Inspection Period which deemed acceptance date
shall be the Commencement Date, unless GNC receives a notice
from Customer prior to the end of the Inspection Period setting
forth in writing the specific non-conformity with the
specifications.") (dkt. no. 1-3 at PageID.167).

        Although the parties may not have presented arguments
to the arbitration panel regarding the specific portions of MSA
§§ 2.2 and 2.3 that the panel ultimately relied upon, the panel
analyzed the requirements regarding the Commencement Date and
the Inspection Period in response to the Plaintiffs' claim
regarding the Disputed Invoices.  Defendant has not established
that the arbitration panel made an award on a claim that was not
submitted to the panel.  Defendant's request to modify the Final
Award, pursuant to § 658A-24(a)(2), must be denied.

## III. **Vacating the Final Award**

        If the Final Award cannot be modified, GNC argues it
should be vacated under Haw. Rev. Stat. § 658A-23(a)(4) because
an arbitrator exceeds his powers when he rules on claims that
were not before him.  See Haw. Rev. Stat. § 658A-23(a)(4) ("Upon
motion to the court by a party to an arbitration proceeding, the
court shall vacate an award made in the arbitration proceeding

if: . . . . (4) An arbitrator exceeded the arbitrator's

powers[.]").

> An arbitrator does not exceed the arbitrator's
> powers by misunderstanding or incorrectly
> applying the law.  See Tatibouet v. Ellsworth, 99
> Hawai`i 226, 54 P.3d 397, 407 (2002).  Vacatur
> may be proper, however, "where the parties
> provide proof that the arbitrators intentionally
> and plainly disregarded" the relevant substantive
> law.  Id. at 411.

Ventress, 603 F.3d at 679.  Because this Court has rejected

Defendant's argument that the arbitration panel decided a claim

that was not submitted by the parties, this Court also rejects

Defendant's argument that the arbitration panel exceeded its

authority.  This Court therefore denies Defendant's request to

vacate the portion of the Final Award addressing the Disputed

Invoices claim.

Because this Court has concluded that there is no

basis to either modify or vacate the Final Award, the Final

Award and the Bifurcated Issue Award, which is incorporated

within the Final Award, must be confirmed.

## IV.  **Award of Attorney's Fees and Costs**

Plaintiff requests an award of reasonable attorney's

fees and costs, pursuant to Haw. Rev. Stat. § 658A-25, which

states:

> (a)  Upon granting an order confirming,
> vacating without directing a rehearing,
> modifying, or correcting an award, the court
> shall enter a judgment in conformity therewith.

> The judgment may be recorded, docketed, and enforced as any other judgment in a civil action.
>
> (b)   A court may allow reasonable costs of the motion and subsequent judicial proceedings.
>
> (c)   On application of a prevailing party to a contested judicial proceeding under section 658A-22, 658A-23, or 658A-24, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

Because this Court has concluded that the Final Award and the Bifurcated Issue Award must be confirmed, this Court has the discretion to award Plaintiffs the reasonable attorney's fees and costs incurred in the instant case.  See § 658A-25(b), (c); see also United Pub. Workers, AFSCME, Loc. 646 v. Hawai`i Dep't of Transp. ("UPW v. Dep't of Transp."), 149 Hawai`i 215, 221, 487 P.3d 302, 308 (2021) ("not[ing] that courts . . . have discretion to grant or deny requests for attorney's fees under" § 658A-25(c)).  This Court has previously declined to read the Hawai`i Supreme Court case law as creating a presumption that a party who prevails in his contested motion to confirm an arbitration award is entitled to an award of attorneys' fees and costs under § 658A-25(c).  See RTI Connectivity Pte. Ltd. v. Gateway Network Connections, LLC, CIV. NO. 22-00302 LEK-RT, 2023 WL 4273516, at *4 (D. Hawai`i June 29, 2023) ("CV 22-302 6/29/23 Order").  This Court applies the legal framework set forth in

the CV 22-302 6/29/23 Order to Plaintiffs' § 625A-25(c) request

in the instant case.

In deciding whether to exercise its discretion and

award attorneys' fees under § 658A-25(c), this Court may

consider factors such as:

-whether GNC's Motion to Vacate, although unsuccessful, had some
    merit; see Hawai`i State Tchrs. Ass'n v. Hawai`i, Dep't of
    Educ., 140 Hawai`i 381, 402 n.17, 400 P.3d 582, 603 n.17
    (2017) ("Potential liability for the opposing parties'
    post-award litigation expenditures will tend to discourage
    all but the most meritorious challenges of arbitration
    awards." (quoting the Revised Uniform Arbitration Act
    ("UAA") § 25 cmt. n.3));

-whether GNC's Motion to Vacate resulted in "drawn-out
    confirmation proceedings"; see id. at 403, 400 P.3d at 604;
    and

-whether the plaintiff was pro se and whether there was a prior
    award of attorneys' fees, see Ventress v. Japan Airlines,
    Civ. No. 07-00581 SPK-LEK, 2008 WL 763185, at *7 (D.
    Hawai`i Mar. 20, 2008) ("In light of the fact that
    Plaintiff is an individual proceeding pro se and the
    Arbitrator has already ordered Plaintiff to pay a portion
    of the arbitration costs, the Court finds that an award of
    attorney's fees and costs is not appropriate.").[6]

The Hawai`i Intermediate Court of Appeals has also noted that

"[t]he Comments to []UAA § 25(c) confirm that the authority to

award reasonable attorney's fees was intended by the framers of

the []UAA to be limited[.]"  United Pub. Workers, AFSCME,

Loc. 646 v. City & Cnty. of Honolulu, 119 Hawai`i 201, 210, 194

P.3d 1163, 1172 (Ct. App. 2008).

---

[6] Ventress, 2008 WL 763185, was affirmed on appeal.  603
F.3d 676 (9th Cir. 2010).

Although this Court acknowledges the limited nature of the authority to award attorney's fees and costs under § 658A-25(c), this Court finds that a discretionary award of reasonable attorney's fees and costs is warranted in the instant case. Unlike Defendant's challenge to Plaintiff's motion to confirm the arbitration panel's interim award in the underlying arbitration proceedings, Defendant's challenges to the Final Award in the Motion to Vacate did not have merit. Cf. CV 22-302 6/29/23 Order, 2023 WL 4273516, at *6 (finding that "there was some merit in GNC's unsuccessful challenge to the Motion to Confirm"). Plaintiffs' request for an award of reasonable attorney's fees and costs incurred in this case is granted. The amount of the award will be determined through a separate motion, which must comply with Local Rule 54.2.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Modify, Change, or Vacate Final Arbitration Award, filed May 3, 2023, is HEREBY DENIED, and Plaintiffs' Motion to Confirm Award of Arbitration Panel, filed March 24, 2023, is GRANTED. The arbitration panel's Findings of Fact, Conclusions of Law, and Final Award, dated February 3, 2023, is CONFIRMED. Further, the arbitration panel's Findings of Fact and Conclusions of Law and Final Award on Bifurcated Issue of Whether Claimant Russell Matulich Was Effectively Removed as the CEO and Director of

22

Respondent Gateway Network Connections, LLC, dated May 17, 2022, which was expressly made a part of the Final Award, is also CONFIRMED.

There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment in favor of Plaintiffs, pursuant to this Order, on **October 12, 2023**, unless Defendant files a timely motion for reconsideration of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 27, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

RTI CONNECTIVITY PTE., LTD., ET AL. VS. GATEWAY NETWORK CONNECTIONS, LLC; CV 23-00165 LEK-WRP; ORDER DENYING DEFENDANT'S MOTION TO MODIFY, CHANGE, OR VACATE FINAL ARBITRATION AWARD AND GRANTING PLAINTIFF'S MOTION TO CONFIRM AWARD OF ARBITRATION PANEL